UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AHMED YASLAM SAID KUMAN,

Petitioner,

v.

BARACK H. OBAMA, et al.,

Respondents.

Civil Action No. 08-1235 (JDB)

## MEMORANDUM OPINION

Currently before the Court is [120] respondents' motion to dismiss petitioner's habeas corpus petition for lack of authorization. For the reasons set forth below, the Court will grant the motion.

## BACKGROUND

In December 2006, Sami al Hajj brought a habeas petition as "next friend" for petitioner Ahmed Yaslam Said Kuman. See Pet. for Writ of Habeas Corpus [Docket Entry 2], at 2. In August 2008, Chief Judge Lamberth appointed the Federal Public Defender for the Central District of California as counsel for Kuman. See Aug. 5, 2008 Order [Docket Entry 9].

Judge Hogan, in his capacity as coordinating judge for the Guantanamo Bay detainee cases, has ordered that in all cases in which a detainee is represented in a petition for habeas corpus by a next friend, "counsel shall file a signed authorization from the petitioner to pursue the action or a declaration by counsel that states that the petitioner directly authorized counsel to pursue the action and explains why counsel was unable to secure a signed authorization." July 29, 2008 Order [Docket Entry 5], at 2; see also Sept. 11, 2008 Protective Order [Docket Entry

20], at 17 ("Counsel shall provide evidence of their authority to represent the detainee as soon as practicable and, in any event, not later than ten days after the conclusion of a second visit with a detainee.").

On October 21, 2008, the Court granted Kuman's counsel an extension of time to obtain Kuman's authorization to proceed with this habeas petition, and required them to provide such authorization by January 10, 2009. See Oct. 21, 2008 Minute Order. The Court subsequently granted Kuman's counsel an additional thirty day extension. See Jan. 12, 2009 Minute Order. Upon Kuman's counsel's motion, the Court stayed the habeas petition several weeks later. See Feb. 3, 2009 Order [Docket Entry 79], at 1. The Court has since granted five unopposed motions by Kuman's counsel to extend the stay. See Apr. 13, 2009 Minute Order; June 1, 2009 Minute Order; Aug. 28, 2009 Minute Order; Oct. 29, 2009 Minute Order; Dec. 30, 2009 Minute Order. Shortly before the Court's most recent stay extension expired, respondents indicated that they would oppose any further extensions. See Mar. 11, 2010 Joint Status Report [Docket Entry 118], at 1-2. During a subsequent status conference, the Court set a briefing schedule for respondents to file a motion to dismiss. See Mar. 12, 2010 Hrg. Tr., 20:2-15; see also Mar. 15, 2010 Minute Order.

Kuman's counsel have visited Guantanamo Bay on a number of occasions in order to meet with Kuman and obtain his authorization to pursue this action. Counsel first tried to meet with Kuman in December 2008, but he declined to meet. See Pet'r's Dec. 29, 2009 Mot. to Extend Stay ("Pet'r's Mot. to Stay") [Docket Entry 115], at 1. Kuman did meet with counsel on January 22, 2009. See id. At this meeting, Kuman "indicated that he was aware that the new president had directed that the detention facility at Guantanamo Bay be closed. [He] expressed

hope that this would result in the release of detainees without the necessity of habeas corpus proceedings." Id. at 2. Counsel did not obtain Kuman's authorization to proceed with this habeas action.

Counsel next tried to meet with Kuman in May 2009, and again in July 2009. See id. On both occasions, Kuman declined to meet. Counsel were, however, able to meet with Kuman during the week of October 5, 2009. At this meeting, "[o]ne of the subjects of discussion was the possibility of seeking transfer of petitioner to Saudi Arabia instead of Yemen, the country of which he is a citizen." Id. at 3. "Petitioner expressed a possible interest in having counsel explore that possibility but indicated he would like to think about it overnight and would meet with counsel the next day if he wished to discuss that possibility further." Id. Kuman did not meet with counsel the next day. Thus, notwithstanding the purpose of the October 2009 trip and meeting, Kuman gave no authorization to proceed. Counsel next tried to meet with Kuman during the week of December 7, 2009, see id., and, according to respondents, again on April 20 and 21, 2010, see Resp't's Reply in Supp. of Mot. to Dismiss [Docket Entry 130], at 3 & n.1. Kuman refused to meet on any of these occasions.

## ANALYSIS

Kuman's counsel has traveled to Guantanamo to try to meet with their client seven times, and have met with him twice. Despite their diligent efforts, appointed counsel have not, as required by Judge Hogan's order, "file[d] a signed authorization from the petitioner to pursue the action or a declaration by counsel that states that the petitioner directly authorized counsel to pursue the action and explains why counsel was unable to secure a signed authorization." See July 29, 2008 Order at 2. "If counsel fails to obtain the authorization from his or her client, the

-3-

Court does not have jurisdiction over petitioner's challenge." Idris v. Obama, 667 F. Supp. 2d 25, 28 (D.D.C. 2009); see also Al Sattar v. Obama, Civ. No. 08-1236 (D.D.C. Oct. 21, 2009) (dismissing habeas petition without prejudice for lack of authorization).

Nevertheless, Kuman's counsel argue that, before dismissing this habeas corpus petition, the Court should inquire further into whether Kuman is competent to decline to authorize this petition, and into whether he has done so knowingly and voluntarily. As they observe, several courts in this district have found that "the trial court faced with a motion by Respondents to dismiss a habeas petition for failure to obtain client authorization to be represented cannot proceed without some direct assurance that the detainee's decision to reject the assistance of counsel and not pursue the habeas petition is voluntary and fully informed." Al Wady v. Obama, 623 F. Supp. 2d 20, 24 (D.D.C. 2009) (Kay, M.J.); see Noori v. Obama, 664 F. Supp. 2d 116, 119 (D.D.C. 2009) (Urbina, J.) (adopting Al Wady's requirement); Saeed v. Obama, No. 05-2386, 2009 WL 1312537 (D.D.C. May 12, 2009) (Walton, J.) (same); see also Al Sharbi v. Bush, 601 F. Supp. 2d 317 (D.D.C. 2009) (Sullivan, J.) (dismissing a habeas petition for lack of authorization after inquiring into the detainee's competence and knowledge). Neither the Supreme Court nor the D.C. Circuit have addressed the issue.

This Court need not resolve the precise parameters of any obligation district judges may have in this regard. Instead, it will assume, for purposes of this motion, that district courts must make some inquiry into whether a detainee who refuses to authorize a habeas petition filed on his behalf is competent, and is acting knowingly and voluntarily. The Court concludes, however, that any such requirements have been met here.

Kuman's counsel have met with Kuman twice. During both of these meetings, Kuman

appears to have been lucid, rational, and capable of understanding his present circumstances. See Pet'r's Mot. to Stay at 2 ("During counsel's January 22 meeting with petitioner, petitioner indicated that he was aware that the new president had directed that the detention facility at Guantanamo Bay be closed. Petitioner expressed hope that this would result in the release of detainees without the necessity of habeas corpus proceedings."); id. at 3 ("Petitioner expressed a possible interest in having counsel explore [a potential transfer to Saudi Arabia] but indicated he would like to think about it overnight and would meet with counsel the next day if he wished to discuss that possibility further."). Moreover, counsel -- who, having met with Kuman twice, are in the best position to identify questions about his mental state -- have offered no evidence that he is incompetent. They have not suggested, for example, that during their meetings they had difficulty interacting with Kuman, or that he appeared delusional or irrational, or that he could not understand the nature of these proceedings, or that he was unable to clearly articulate his own wishes. Thus, the evidence before the Court firmly supports the conclusion that Kuman is competent.[1] No further inquiry into this issue is warranted on this record.

The evidence also indicates that Kuman's decision not to authorize this habeas petition is knowing and voluntary. Kuman's "hope" that he may be released "without the necessity of

---

[1] Appointed counsel suggest that the conditions of Kuman's confinement, his possible mistreatment during his detention, and his past hunger strikes all call his competence into question. See Pet'r's Opp'n to Mot. to Dismiss ("Pet'r's Opp'n") [Docket Entry 126], at 16. The Court does not doubt that these factors could cast doubt on an individual's competence. See, e.g., Comer v. Stewart, 215 F.3d 910, 916 (9th Cir. 2000); Mata v. Johnson, 210 F.3d 324, 332 (5th Cir. 2000). Nonetheless, under the unique circumstances here, and for purposes of this motion to dismiss without prejudice, counsel's failure to intimate that Kuman appeared incompetent to them, or to identify actual evidence (or even any specific inference) of incompetence, is fatal to their position. Cf. Al-Bihani v. Obama, 590 F.3d 866, 876 (D.C. Cir. 2010) ("Habeas review for Guantanamo detainees need not match the procedures developed by Congress and the courts specifically for habeas challenges to criminal convictions.").

habeas corpus proceedings," Pet'r's Mot. to Stay at 2, along with his corresponding failure to authorize counsel to proceed with a habeas corpus petition, is evidence that he has consciously chosen not to pursue such habeas proceedings. So, too, are Kuman's interactions with counsel at their October 2009 meeting. Counsel describe how, at this meeting, Kuman "expressed a possible interest" in a transfer to Saudi Arabia. Id. at 3. But they give no indication that, despite their best efforts to persuade him otherwise at two face-to-face meetings, Kuman had any similar interest in pursuing a habeas petition. In fact, in light of Kuman's statement that he would meet with his counsel the next morning "if he wished to discuss th[e] possibility [of transfer to Saudi Arabia] further," id., his unwavering refusal to meet is strong evidence that he does not wish to pursue through counsel a transfer to Saudi Arabia or any other avenue of potential relief. Kuman's refusal to meet with counsel on at least three occasions since their October 2009 meeting confirms that this remains the case.[2]

Kuman's counsel ask the Court to, at the least, "order the government to produce Mr. Kuman's medical records before dismissing the petition." Pet'r's Opp'n at 18 n.9. "Without some evidence that petitioner suffers from a mental incapacity," however, "the Court will not compel discovery into petitioner's competence, knowledge, and voluntariness." Idris, 667 F. Supp. 2d at 28. Here, no such evidence has been proffered.

Nor can Kuman's counsel rely on next friend standing to pursue this action on Kuman's

---

[2] Kuman's counsel speculate that Kuman's refusal to meet may be due to his "being told he must be moved in chains from the camp in which he is housed to another camp in order to meet with counsel." Pet'r's Opp'n at 16; see Pet'r's Mot. to Stay at 3 (Kuman previously indicated that "at least one of the prior occasions on which he failed to meet with counsel" was due in part "to a miscommunication about . . . where petitioner would be willing to meet"). This is merely counsel's conjecture, and the Court views it as unlikely, given the sheer number of times that Kuman has now refused to meet.

behalf. As an initial matter, Judge Hogan's order makes clear that a signed authorization is required in all cases "in which the detainee is represented in the petition by a next friend." July 29, 2008 Order at 2. No authorization exists here.

More fundamentally, though, counsel have not established the requirements to obtain next friend standing. Next friend standing requires the next friend to, among other things, "provide an adequate explanation -- such as inaccessibility, mental incompetence, or other disability -- why the real party in interest cannot appear on his own behalf to prosecute the action." Whitmore v. Arkansas, 495 U.S. 149, 163 (1990). Kuman's counsel suggest that their client's inability to speak English as well as his harsh -- and allegedly torturous -- conditions of confinement satisfy this requirement. See Pet'r's Opp'n at 14-16. But Kuman appears competent, and has been offered access to translators and well-qualified counsel. Thus, "counsel's mere speculation that petitioner was mistreated and suffers from debilitating effects from his confinement at Guantanamo Bay is insufficient to demonstrate that petitioner is 'unable to litigate his own cause due to mental incapacity, lack of access to court, or other similar disability.'" Idris, 667 F. Supp. 2d at 29 (quoting Whitmore, 495 U.S. at 165). Moreover, the reasons offered by Kuman's counsel are just as true for the scores of detainees who have authorized habeas actions to be pursued.

## CONCLUSION

Unlike the petitioners in some previous cases, Kuman has already had two face-to-face meetings with counsel. Those meetings, together with several other occasions where Kuman declined to meet with counsel, have produced neither an authorization to proceed nor any specific evidence of Kuman's incompetence or the absence of a knowing, voluntary decision not to proceed. Because Kuman's counsel have not shown that Kuman has authorized them to bring this habeas

petition on his behalf, and because the requirements to obtain next friend standing are not met, the Court will dismiss Kuman's habeas corpus petition without prejudice.[3]  A separate Order accompanies this Memorandum Opinion.

/s/
JOHN D. BATES
United States District Judge

Dated: July 23, 2010

---

[3] In light of the numerous extensions the Court has already granted, it declines to adopt Kuman's counsel's suggestion to extend the stay once more.  See Pet'r's Opp'n at 20.